IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT C. TICE, | ) | CASE NO. 4:15 CV 1130 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action by Robert Chester Tice, Sr. under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI").[1]

The parties have consented to my jurisdiction.[2]  The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 12.

[3] ECF # 9.

[4] ECF # 10.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Tice, who was 32 years old at the time of the administrative hearing,[11] graduated from high school[12] and lives with his wife and three children.[13]  He previously worked a few months at Taco Bell but has not worked there since July 2011.[14]

The Administrative Law Judge ("ALJ") found that Tice had the following severe impairments: low back pain, scoliosis, knee pain, posttraumatic stress disorder, affective

---

[5] ECF # 6.

[6] ECF # 13.

[7] ECF # 16 (Tice's brief), ECF # 17 (Commissioner's brief).

[8] ECF # 16-1 (Tice's charts), ECF # 17-1 (Commissioner's charts).

[9] ECF # 16-2 (Tice's fact sheet).

[10] ECF # 20.

[11] ECF #16-2 at 1.

[12] *Id.*

[13]  ECF # 10, Transcript of Proceedings ("Tr.") at 39.

[14] *Id.*

-2-

disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder.[15] The ALJ decided that the relevant impairments did not meet or equal a listing.[16] The ALJ made the following finding regarding Tice's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). The claimant is limited to performing one to two step instructions and complete one to two step tasks with only superficial contact with coworkers and supervisors and no interaction with the public. He requires a cane for ambulation and a sit/stand option which would allow the individual to sit or stand alternately at will provided that they are no off-task more than ten percent of the work period. The claimant can occasionally use ramps and stairs but can never use ladders, ropes or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch and crawl. The claimant is not able to perform at a production rate pace (e.g. assembly line work) but can perform goal oriented work (e.g. office cleaner) .[17]

The ALJ decided that this residual functional capacity precluded Tice from performing his past relevant work as a fast food worker.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant

---

[15] *Id.* at 13.

[16] *Id.*

[17] *Id.* at 15.

[18] *Id.* at 21

number of jobs existed locally and nationally that Tice could perform.[19] The ALJ, therefore, found Tice not under a disability.[20]

The Appeals Council denied Tice's request for review of the ALJ's decision.[21] With this denial, the ALJ's decision became the final decision of the Commissioner.[22]

**B.    Issues on judicial review**

Tice asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Tice presents the following issues for judicial review:

- Whether the ALJ erred in failing to provide good reasons for rejecting the opinion of the treating psychiatrist where the treating psychiatrist identified limitations inconsistent with an ability to sustain work and the ALJ failed to analyze the opinion fully under Social Security's own rules and regulations as required by Sixth Circuit case law.

- Whether the ALJ erred in his evaluation of the opinions of the non-examining state agency physicians where he failed to provide the analysis required under Social Security's own rules and regulations.

- Whether the ALJ erred in relying on vocational expert testimony at Step 5 of the sequential evaluation where the hypothetical question to which the vocational expert replied was incomplete.[23]

---

[19] *Id.*

[20] *Id.* at 23.

[21] *Id.* at 1.

[22] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

[23] ECF # 16 at 1.

For the reasons that follow, I conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be remanded.

## Analysis

### A.     Standards of review

#### 1.     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[24]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the

---

[24] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-5-

Commissioner survives "a directed verdict" and wins.[25] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[26]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    *The treating source and good reasons rule***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[27]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[28]

---

[25] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[27] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2).Tice filed only an application for supplemental security income benefits.

[28] *Id.*

-6-

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[29] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[30]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[31] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[32] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[33] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[34]

In *Wilson v. Commissioner of Social Security*,[35] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[29] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[30] *Id.*

[31] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[32] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[33] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[34] *Id.* at 535.

[35] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[36] The court noted that the regulation expressly contains a "good reasons" requirement.[37] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[38]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[39] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[40] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[41] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

-----

[36] *Id.* at 544.

[37] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[38] *Id.* at 546.

[39] *Id.*

[40] *Id.*

[41] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[42]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[43] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[44] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[45] *Blakley v. Commissioner of Social Security*,[46] and *Hensley v. Astrue*.[47]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[48] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[49] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's

---

[42] *Id.*

[43] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[44] *Id.* at 375-76.

[45] *Rogers*, 486 F.3d at 242.

[46] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[47] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[50] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[51]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[52] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[53] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[54] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[55] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[56]

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[50] *Id.*

[51] *Rogers*, 486 F.3d at 242.

[52] *Gayheart*, 710 F.3d at 376.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[57]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[58] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[59] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[60] or that objective medical evidence does not support that opinion.[61]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[57] *Id.*

[58] *Rogers*, 486 F.3d 234 at 242.

[59] *Blakley*, 581 F.3d at 406-07.

[60] *Hensley*, 573 F.3d at 266-67.

[61] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[62] The Commissioner's *post hoc* arguments on judicial review are immaterial.[63]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[64]

- the rejection or discounting of the weight of a treating source without assigning weight,[65]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[66]

---

[62] *Blakley*, 581 F.3d at 407.

[63] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[64] *Blakley*, 581 F.3d at 407-08.

[65] *Id.* at 408.

[66] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[67]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[68] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[69]

The Sixth Circuit in *Blakley*[70] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[71] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[72]

In *Cole v. Astrue*,[73] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[67] *Id.* at 409.

[68] *Hensley*, 573 F.3d at 266-67.

[69] *Friend*, 375 F. App'x at 551-52.

[70] *Blakley*, 581 F.3d 399.

[71] *Id.* at 409-10.

[72] *Id.* at 410.

[73] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-13-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[74]

## B.     Application of standards

This is yet another case where the decision turns on the propriety of the weight assigned to the opinion of a treating source and, on the method used by the ALJ to assign that weight and explain the reasons.  As has become too common, there is no doubt that the ALJ paid only lip service to the requirements of the regulations or to the case authority in interpreting these regulations. But, in yet another replay of a frequent argument, the Commissioner contends that the reviewing court can see the portrait of compliance with the requirements by sorting through the whole of the opinion to find the pieces and then rearrange them like a puzzle to form the portrait.

The opinions in this case are those of Dr. Ronald Yendrek, D.O., the claimant's treating psychiatrist.  In February 2012 Dr. Yendrek submitted his responses to a number of issues listed on a mental status questionnaire prepared by a state agency.[75]  In March 2012 Dr. Yendrek completed a multiple choice form as to the nature and severity of the claimant's mental impairments prepared by the claimant's counsel.[76]  The ALJ here noted and discussed each report.

---

[74] *Id.* at 940.

[75] Tr. at 576-580.

[76] *Id*. at 582-86.

As to the February questionnaire, the ALJ observed that Dr. Yendrek opined that Tice had a "fair" ability to remember, understand and follow directions; and a "fair" ability to maintain attention and sustain concentration, persist at tasks and complete them in a timely fashion.[77] He also found that Tice had anger issues which affected his social interactions, and would react poorly to pressures in the workplace.[78]

Concerning the March 2012 form, the ALJ noted that Dr. Yendrek found "mild" restrictions as to Tice's ability to perform activities of daily living, and "mild" difficulty in maintaining social function.[79] He then recounted the following specific points in the opinions of Dr. Yendrek:

- Tice could remember, understand and follow instructions for simple tasks at least 85% of the time;

- he could stay on task less than 66% of the time, making him 15 to 25% less productive than an unimpaired worker;

- he would be absent, later or on leave more than 15% of the time;

- he could occasionally engage successfully in superficial social interactions;

- he would occasionally be distracted by co-workers;

- he could not accept criticism and supervision except in a supportive work environment;

- he would have emotional blowups or outbursts more than once every other month;

---

[77] *Id*. at 19.

[78] *Id.*

[79] *Id.*

-15-

- his symptoms would be exacerbated by a fast-paced job, with deadlines, that required precision;

- he was emotionally fragile, and additional stress, even in unskilled, low skill or routine work would cause him to decompensate;

- he would only have a likelihood of success in a sheltered environment.[80]

Considering all of the above opinions of Dr. Yendrek, the ALJ concluded that they are entitled to "little weight" because they are "not consistent with [Dr. Yendrek's] own mental status examination findings in the record" and are "inconsistent with the claimant's reported activities of daily living, which evidence that he is not as limited as opined by Dr. Yendrek."[81] As concerns Dr. Yendrek's mental status examination notes, the ALJ observed at a later part of the opinion that those notes did show that Tice had "some difficulties with neighbors," but also showed that Tice was "generally stable during the entire period with only some waxing and waning of symptoms."[82]  In a prior discussion of that same status examination the ALJ observed that Dr. Yendrek found Tice "cooperative" with a "full range of affect," but also "anxious, unkempt, and impulsive" with an "angry and irritable mood" and "impaired insight and poor judgment."[83]

---

[80] *Id.*

[81] *Id.*

[82] *Id.* at 20.

[83] *Id.* at 16.

The ALJ, in yet another section of the opinion, related that Tice's activities of daily living were mostly restricted by physical impairments.[84]  The ALJ stated that Tice "could cook simple meals, take care of his children, go fishing and watch baseball games."[85]  In addition, the ALJ noted that Tice "attended church and played corn hole," as well as drove his car."[86]

As was mentioned above, that the ALJ's statement of reasons to discount Dr. Yendrek's opinions was highly general and cited no specific clinical or examination finding, or activity of daily living, as being opposed to any particular one of Dr. Yendrek's many individual points in his opinions.  In fact, even a basic review of the record, shows the great difficulties in this approach.  Although Dr. Yendrek found Tice stable and cooperative in the mental status examination, he also found Tice was impulsive and angry, with impaired insight and poor judgment.  And Tice's own activities of daily living were all solitary pursuits - cooking, driving, fishing and watching ball games - with the few exceptions of going to church and taking care of his children, neither of which are work-related activities.  Without a direct comparison of the supposed opposites, together with a reasoned statement of why that alleged distinction is so meaningful as to warrant discounting the opinion of a treating source, I cannot fashion such a reason for the ALJ out of the superficial assertion that some or all of a highly detailed opinion was somehow "inconsistent" with the findings of the

---

[84] *Id*. at 13.

[85] *Id*.

[86] *Id*.

mental status examination that plainly spoke of "impaired insight and poor judgment," and activities of daily living that largely consisted of solitary pursuits or activities that were in no way work-related.

But, having found that the ALJ neither located such contradictions nor sufficiently articulated a good reason to downgrade Dr. Yendrek's opinion, it does not follow that those objectives cannot be met on this record. That remains to be determined, and it warrants a remand so that it may be attempted.[87]

## Conclusion

For the reasons stated, I find that the decision of the Commissioner in this case is not supported by substantial evidence, and thus the matter is remanded for further proceedings consistent with this opinion.


IT IS SO ORDERED.


Dated: August 30, 2016                                   s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[87] In *Smith v. Comm'r of Soc. Sec.*, No. 5:13cv870, 2014 WL 1944274, at *8, I set out a template that if used, would provide meaningful judicial review of the weight assigned to treating source opinions consistent with the regulations and the Sixth Circuit decision in *Gayheart*.  I recommend its use on remand of this case.  Given the administrative environment discussed in *Smith, id.* at **7-8, counsel could assist the ALJ in preparing the analysis applicable in this case consistent with that template. Although the ALJ need not adopt the analysis proposed by counsel he or she would do well to adhere the template.